**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| JOHN D. ARWOOD, *et al.*, | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) C.A. No. 2019-0904-JRS |
| | ) |
| AW SITE SERVICES, LLC, | ) |
| *Defendant.* | ) |
| | ) |
| | ) |
| AW SITE SERVICES, LLC, | ) |
| | ) |
| *Counterclaim Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN D. ARWOOD, *et al.*, | ) |
| | ) |
| *Counterclaim Defendants,* | ) |
| and | ) |
| STEVEN C. GOODE, | ) |
| | ) |
| *Third-Party Defendant.* | ) |
| | ) |

**ORDER GRANTING PLAINTIFFS' MOTION FOR REARGUMENT ON PRE-JUDGMENT INTEREST AND COURT COSTS**

Plaintiffs and Counterclaim Defendants, John D. Arwood, Together Waste, Inc., A.W. Waste Management, Inc., Dumpster.Me, LLC, Dumpster.Me of Wake County, LLC, Portable Toilet Rental Company, Inc., and Arwood Waste, Inc., and Plaintiff Arwood Site Services, Inc. (collectively, "Plaintiffs"), having submitted their Motion for Reargument on Pre-Judgment Interest and Court Costs (the "Motion"); Defendant/Counterclaim Plaintiff, AW Site Services, LLC ("AW")

1

having submitted its opposition to the Motion; and the Court having considered the submissions and arguments of the parties, it appears to the Court that:

1.      Plaintiffs seek reargument of the Court's decision that AW is entitled to pre-judgment interest and prevailing party costs over and above the contractual cap of $3.9 million for recoverable "Losses" (as defined) set forth in the operative Asset Purchase Agreement ("APA").[1]  Plaintiffs maintain that the $3.9 million cap is inclusive of all interest and costs; AW counters that the cap does not include interest on, or costs relating to, judgments secured following the successful prosecution, as opposed to defense or settlement, of claims asserted under the APA.

2.      The Court may grant reargument when it has "overlooked a controlling decision or principle of law that would have controlling effect, or [] has misapprehended the law or the facts so that the outcome of the decision would be different."[2]  "Where the motion merely rehashes arguments already made by the parties and considered by the Court when reaching the decision from which reargument is sought, the motion must be denied."[3]  Likewise, reargument will be

---

[1] APA § 7.2(c)(iii)(A).

[2] *Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs.*, 2008 WL 2133417, at *1 (Del. Ch. May 21, 2008) (stating the requisite grounds for granting reargument).

[3] *Wong v. USES Hldg. Corp.*, 2016 WL 1436594, at *1 (Del. Ch. Apr. 5, 2016) (citing *Lewis v. Aronson*, 1985 WL 21141, at *2 (Del. Ch. June 7, 1985)).

denied when the motion raises arguments that should have been made in connection with the underlying decisions.[4]

3.     As an initial matter, AW argues that the Motion should be denied because it raises arguments not advanced before or during trial.  I disagree.  The $3.9 million cap has been a feature of this litigation from the outset.  Indeed, AW's fraud claim was prompted by the fact that claims of fraud are excepted from the cap.[5] And Plaintiffs pointed to the cap in the pre- and post-trial briefing as support for their argument that AW was entitled to no more than a $3.9 million recovery.[6]  While it is true that neither party parsed the relevant language to the degree they have in connection with the Motion, I am satisfied that the effect of the contractual cap on recovery under the APA is not newly presented such that reargument is unavailable.

4.     Turning to the merits of the Motion, Section 7.2(c)(iii)(A) of the APA provides that "the maximum amount of Losses" recoverable under certain indemnity provisions of the APA "shall be Three Million Nine Hundred Thousand Dollars."[7] In turn, the APA defines "Losses" to mean, in relevant part: "any loss, Liability,

---

[4] *Id.*

[5] APA § 7.2(c)(iii)(A).

[6] *See, e.g.*, D.I. 162 at 29 (Plaintiffs' Pretrial Brief); D.I. 205 at 47, 49, 54 (Plaintiffs' Answering Post-Trial Brief).

[7] APA § 7.2(c)(iii)(A).

demand, claim, action, cause of action, cost, damage, deficiency, Tax, penalty, fine or expense, whether or not arising out of third-party claims (including interest, penalties, attorneys', accountants' and other professionals' fees and expenses, court costs and all amounts paid in investigation, defense or settlement of any of the foregoing)[.]"[8] According to AW, this definition makes clear that any interest or costs incurred in the prosecution, as opposed to defense or settlement, of a claim is excluded from the definition of "Losses" and, therefore, not subject to the $3.9 million cap. Here again, I disagree.

5.      Delaware courts interpret the clear and unambiguous terms of a contract according to their plain meaning.[9] When interpreting a contract, our "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."[10] In this instance, the definition of "Losses" is susceptible to but one reasonable construction and is, therefore, unambiguous.[11]

---

[8] APA § 1.1 ("Loss").

[9] *GMG Cap. Invs., Ltd. Liab. Co. v. Athenian Venture P'rs I, Ltd. P'ship*, 36 A.3d 776, 779 (Del. 2012).

[10] *Union Fire Ins. Co. of Pittsburgh, P.A. v. Pan American Energy, LLC*, 2003 WL 1432419 at *4 (Del. Ch. March 19, 2003).

[11] *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins.* Co., 616 A.2d 1192, 1195 (Del. 1992).

6. AW's construction would have the Court conclude that the parties intended the phrase ". . . including interest, penalties, attorneys', accountants' and other professionals' fees and expenses, court costs and all amounts paid in investigation, defense or settlement of any of the foregoing" to mean that only interest and costs incurred in the defense or settlement of an action under the APA qualify as "Losses." That is not a reasonable construction for at least two reasons.

7. *First*, contrary to its plain meaning, AW construes the term "including" as a term of exclusion when it is, in fact, a term of inclusion. Black's Law Dictionary defines *include*: "to contain as part of something. The participle including typically indicates a partial list."[12] Delaware courts similarly view "including" as "a term of enlargement, and not of limitation."[13] Other courts are in accord.[14] As relevant here, the term "including" that introduces the parenthetical language AW relies upon reveals that the portions of the definition beyond the parenthetical are not limited by the parenthetical. That means the broad language "any loss, Liability, demand,

---

[12] Black's Law Dictionary, *Include* (11th ed. 2019).

[13] *Concord Steel, Inc. v. Wilm. Steel Processing Co., Inc.*, 2008 WL 902406, at *7 (Del. Ch. Apr. 3, 2008) (citation omitted).

[14] *See, e.g.*, *City of Phila. v. AG of the United States*, 916 F.3d 276, 287 (3d Cir. 2019) ("This clause, however, is preceded by the word "including," which is used to denote something that is within a larger whole."); *City of Providence v. Barr*, 954 F.3d 23, 41 (1st Cir. 2020) ("In both lay and legal usage, "include" generally signifies that what follows is a subset of what comes.").

claim, action, cause of action, cost, damage, deficiency, Tax, penalty, fine or expense" that appears at the outset of the definition remains intact. And that language would appear to encompass AW's claim for interest and costs regardless of what is said in the parenthetical.[15]

8.      *Second*, and more importantly, AW ignores the "and" that appears within the parenthetical. The word "and" is conjunctive, in its commonly accepted meaning, and its presence indicates an intent to join, not to exclude.[16] As applied here, the "and" in the parenthetical reveals that "Loss" "include[es]" the "interest, penalties, attorneys', accountants' and other professionals' fees and expenses, court costs" recovered or incurred by a party, whether in the prosecution or defense of an indemnifiable claim, "*and*" "all amounts paid in investigation, defense or settlement

---

[15] AW contends that this construction would render the "including" parenthetical mere surplusage in violation of a settled canon of contract construction regularly applied in Delaware. *See JJS, Ltd. v. Steelpoint CP Hldgs., LLC*, 2019 WL 5092896, at *6 (Del. Ch. Oct. 11, 2019) (observing that "[c]ontractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court") (quoting *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007), *aff'd*, 945 A.2d 594 (Del. 2008)). Not so. The parenthetical language adds clarity to the broad terms that precede it; it does not, however, needlessly parrot those terms.

[16] *See Concord Steel, Inc. v. Wilm. Steel Processing Co., Inc.*, 2008 WL 902406, at *7 (Del. Ch. Apr. 3, 2008); *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *7 (Del. Super. Ct. Jan. 17, 2014).

of any of the foregoing."[17]  That is the only reasonable construction of the "Losses" definition.

9.     Given that the Court's award of pre-judgment interest and court costs over and above the $3.9 million cap is not consistent with the APA's unambiguous definition of "Losses," the award reflects a "misapprehension of the facts" that affected the outcome the case.[18]  The Motion, therefore, must be GRANTED.  The Court's final judgment will not include an award of pre-judgment interest or court costs as AW's proven damages have consumed the $3.9 million contractual cap.

**IT IS SO ORDERED.**

_____*/s/ Joseph R. Slights III*_____
Vice Chancellor Joseph R. Slights III

Dated:  March 31, 2022

---

[17] APA § 1.1 ("Loss").

[18] *Those Certain Underwriters at Lloyd's, London*, 2008 WL 2133417, at *1.